IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **SANDRA KASTRUL**, | Civil Case No. 09-1008-KI |
| Plaintiff, | |
| | OPINION AND ORDER |
| vs. | |
| **CITY OF LAKE OSWEGO**, a municipal corporation, and **DAVID DONALDSON**, | |
| Defendants. | |

       Judy Danelle Snyder
       Holly Lloyd
       Law Office of Judy Danelle Snyder
       1000 SW Broadway, Suite 2400
       Portland, Oregon  97205

             Attorneys for Plaintiff

Page 1 - OPINION AND ORDER

Karen O'Kasey
Kari A. Furnanz
Mark C. Sherman
Hoffman, Hart & Wagner, LLP
1000 SW Broadway, Twentieth Floor
Portland, Oregon  97205

    Attorneys for Defendants

KING, Judge:

In 1998, plaintiff Sandra Kastrul sued her employer, the City of Lake Oswego ("City"), alleging sex discrimination and retaliation. After settling the case in 2000, Kastrul returned to work but her managers continued to complain about her performance. The City terminated Kastrul in 2008, causing her to file the instant case in which she alleges retaliation claims under Title VII and ORS 659A.030, a retaliation claim for exercising First Amendment rights, breach of the settlement agreement in the 1998 case, and breach of contract based on city personnel policies. Before the court is Defendants' Motion for Summary Judgment (#28). For the reasons below, I grant partial summary judgment and dismiss the breach of city policies claim and the portion of the First Amendment retaliation claim which relies on Kastrul's January 2008 speech.

## FACTS

The City employed Kastrul in the Human Resources ("HR") Department beginning in 1987. Kastrul sued the City and two individual defendants, Schmitz and Kincaid, in 1998, alleging sex discrimination and retaliation. The parties settled the case in 2000. The Settlement Agreement included the following provisions: (1) the City would perform a 360-degree survey; (2) complaints about the City Manager must be in writing to the City Attorney; (3) the City

would perform an employee climate survey; (4) Kastrul would receive six months plus two weeks of paid leave; (5) Kastrul would retain her current position of HR Project Manager, have due process rights and a just cause standard for dismissal, and her current salary, pay grade, and scope of job duties would be maintained; and (6) the HR Director maintained the ability to adjust Kastrul's duties and responsibilities within the scope of her current job description.

During the following years, Kastrul's supervisors took issue with her performance at times, including in memos given to her in 2001 and 2006.

The City hired defendant David Donaldson as the Assistant City Manager and HR Director on October 18, 2006. Prior to being hired by the City, Donaldson knew Kastrul's supervisor, Janice Deardorff, through activities for HR professionals. Donaldson knew that Kastrul had sued the City, and he sensed that there was tension between Deardorff and Kastrul. Donaldson began supervising Kastrul on December 1, 2006. He knew that the 360-degree survey was an outcome of Kastrul's prior lawsuit but did not know the other terms of the Settlement Agreement or that it would impact his ability to change the scope of Kastrul's job responsibilities.

In March 2007, Donaldson gave each member of the HR staff, including Kastrul, a memo stating his expectations for that employee in 2007. Donaldson gave Kastrul deadlines for projects assigned to her including safety programs, personnel policies and training, assistance with collective bargaining, drug testing for new hires, recruitment, and job descriptions. He also questioned Kastrul's judgment in two instances concerning an exit interview and a recruitment.

On January 11, 2008, Donaldson gave Kastrul an annual performance evaluation memo. He stated that there was a mismatch between Kastrul's interests and approach to being an HR

Program Manager and Donaldson's needs as the HR Director. Donaldson expected the situation to get worse in light of additional issues he wanted the department to address. He did not have confidence in Kastrul's ability to finish what she started in a logical, concise manner, and he was concerned about Kastrul's judgment and organization. Donaldson gave Kastrul a list of what he needed her to accomplish in 2008: (1) update job descriptions; (2) complete the safety manual and training schedule; (3) create systems for safety inspections of city facilities; (4) finish and test the building evacuation plan; (5) prepare for union negotiations; (6) input two proactive ideas to improve the HR department and the City; (7) provide sound judgment on inquiries from department managers; and (8) implement new approaches in the selection process for recruitments.

Kastrul disagreed with Donaldson's view of her performance. She told Donaldson that his actions violated the Settlement Agreement, and she wanted to meet with City Attorney David Powell. Kastrul believes that her role in benefits and recruitment diminished after she entered into the Settlement Agreement, and that the assignments she was given in other areas had changed. As one example, Kastrul thought Donaldson had assigned her some clerical duties, such as revising the job descriptions into a single format. She also thought Donaldson should not have given her new responsibilities for safety which were previously performed by maintenance supervisors.

When Kastrul spoke to Powell on January 24, 2008 about the evaluation, she told him that Donaldson was violating the Settlement Agreement by taking over her responsibilities. Kastrul thought Donaldson feared not having enough work in his role as HR Director. Kastrul was concerned Donaldson was taking unfair steps to terminate her, and she asked Powell to look

into the situation. Powell agreed to speak to Donaldson about Kastrul's concerns with the Settlement Agreement, but refused to get involved in Kastrul's challenge to the accuracy of the performance evaluation.

On January 24, 2008, Donaldson sent Kastrul a memo documenting her decision not to respond to the performance evaluation. He also stated:

> It is unfortunate that your response to my review was to focus on differences in styles and perceptions, while attacking my capabilities by questioning how I got my job, your perceptions on my views on human resources vs. personnel, and threatening me with the protections you believe you have from a previous lawsuit. I would like to sit down with you early next week and develop a game plan for the coming year so that you can be successful.

Sherman Decl. Ex. 9.

On February 13, 2008, Donaldson sent Kastrul a memo to follow-up on her performance evaluation. Donaldson stated that, on Kastrul's suggestion, he had reviewed the Settlement Agreement. He insisted that he had not diminished Kastrul's job duties in violation of the Settlement Agreement's terms. Donaldson decided the best way to address his expectations for Kastrul was for them to have weekly status meetings. He then listed eight projects for Kastrul to complete in 2008. To some extent, the list overlapped the tasks Donaldson had specified in the performance evaluation, but he added new tasks, more fully specified some of the previous tasks, and added interim deadlines. Donaldson also told Kastrul he would do a mid-year evaluation and would consider appropriate disciplinary actions if she had not made improvements.

Alex McIntyre was hired as City Manager in March 2008.

After consulting with McIntyre, Powell, and outside legal counsel, Donaldson gave Kastrul a written Due Process Notice on May 29, 2008 in which he listed three fundamental

issues he had with her performance, along with numerous examples of each: (1) the "[a]bility to succinctly finish projects in a timely and complete manner"; (2) the "[a]bility to use good judgment in addressing and resolving human resource issues"; and (3) the "[a]bility to provide customer service and assistance that is valued by many managers who now either don't want to use HR or want to use different staff in HR." Id. Ex. 13, at 1, 2, 5. Donaldson asked Kastrul to respond in writing or orally at a pre-disciplinary meeting on June 9, and stated he was seriously considering terminating Kastrul.

On May 29, Kastrul asked McIntyre to meet with her. Powell did not want McIntyre to speak to Kastrul until she had responded to the Due Process Notice.

Kastrul gave Donaldson a written response to the Due Process Notice on June 9. On June 11, the City terminated Kastrul effective June 13, 2008 for the reasons Donaldson stated in the Due Process Notice.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine dispute of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains a fact dispute to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." Nicholson v. Hyannis Air Service, Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (internal quotation omitted).

DISCUSSION

I.      Statutory Retaliation Claims

Kastrul brings retaliation claims under Title VII and ORS 659A.030(1)(f).

In a Title VII retaliation claim, a plaintiff can prove a prima facie case by establishing the following factors: (1) involvement in a protected activity; (2) an adverse employment action; and (3) a causal link between the activity and the employment action. If the plaintiff establishes the prima facie case, the burden shifts as in a disparate treatment case. Nilsson v. City of Mesa, 503 F.3d 947, 953-54 (9th Cir. 2007). At summary judgment, the degree of proof necessary to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotation omitted).

The standard for establishing a prima facie case of discrimination under Oregon law is identical to that used in federal law. Henderson v. Jantzen, Inc., 79 Or. App. 654, 657, 719 P.2d 1322 (1986). The Ninth Circuit has held, however, that when analyzing Oregon's discrimination statute, the federal court should apply the *McDonnell Douglas* burden-shifting analysis rather than Oregon's rule because the burden-shifting analysis is federal procedural law. Snead v. Metro. Prop. Cas. Ins. Co., 237 F.3d 1080, 1090-93 (9th Cir.). Consequently, I will apply the burden-shifting analysis.

      A.      Limitations on the Claims

Defendants argue that a portion of Kastrul's claims are time-barred. Kastrul argues that time-barred acts may be considered as proof of timely claims even though time-barred acts cannot be considered for liability based on those acts alone.

Kastrul's counsel clarified at the oral argument that Kastrul alleges she was terminated in retaliation for protected activity, and that she does not allege a retaliatory hostile environment claim. I note, however, that Kastrul may use acts other than her termination, including acts which occurred outside the limitations periods, to prove her case. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061 (2002) (in a claim for a discrete act of discrimination, Title VII does not "bar an employee from using the prior acts as background evidence in support of a timely claim").

Kastrul was terminated on June 13, 2008. She filed her BOLI complaint on November 13, 2008, which is within the 300-day Title VII limitations period set forth in 42 U.S.C. § 2000e-5(e)(1). Similarly, Kastrul served her tort claim notice on October 30, 2008, which is within the 180-day period set forth in the Oregon Tort Claims Act, ORS 30.275(2)(b). Thus, Kastrul's Title VII and ORS 659A.030 retaliation claims are timely, and I deny defendants' motion based on this theory.

B.    Causation

The parties disagree about whether there is a factual issue that Kastrul's protected activity caused her termination.

The causal link in the prima facie case can be inferred from circumstantial evidence, such as the proximity in time between the protected activity and the retaliatory employment decision. Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1069 (9th Cir. 2003) (only nine days lapsed between complaint and termination). See also Clark County School District v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508 (2001) (citing with approval cases holding that a three month period and a four month period were insufficient to establish causation for a prima facie case

Page 8 - OPINION AND ORDER

when there is no causation evidence beyond the temporal proximity); Ray v. Henderson, 217 F.3d 1234, 1244 (9th Cir. 2000) (first retaliatory action occurred two and one half months after first in a series of complaints); Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that a two-to-three-month delay was not too long to establish a causal link sufficient to withstand summary judgment and citing with approval Hochstadt v. Worcester Found. for Experimental Biology, Inc., 425 F. Supp. 318, 324-25 (D. Mass.), aff'd, 545 F.2d 222 (1st Cir. 1976), which held that a six-month delay could satisfy the causation requirement); Villiarimo v. Aloha Island Air, 281 F.3d 1054, 1065 (9th Cir. 2002) (nearly 18-month lapse between protected activity and adverse employment action is too long, by itself, to give rise to an inference of causation and citing cases from other circuits with similar holdings for periods ranging from four to eight months); Manatt v. Bank of America, NA, 339 F.3d 792, 802 (9th Cir. 2003) (nine months too long to establish causation).

  Defendants argue that there is no causal link between Kastrul's protected activity of filing her 1998 lawsuit, which was settled in 2000, and the decision to terminate her in June 2008. They note that Donaldson was not the HR Director until December 2006, years after Kastrul's lawsuit was settled. Defendants contend that the City bent over backwards to afford Kastrul opportunities to succeed, including hiring three facilitators between 2001 and 2006 to help Kastrul improve her working relationship with her prior supervisor, Deardorff.

  In response, Kastrul argues that the evidence gives rise to an inference that Donaldson terminated her in retaliation for her protected activities, "both in filing the prior lawsuit, and in challenging Donaldson by raising the protections granted in that lawsuit to Donaldson and Powell." Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. 15. Kastrul argues that Deardorff

Page 9 - OPINION AND ORDER

hand-picked Donaldson to replace her, Donaldson was aware of Deardorff's issues with Kastrul through his friendship with Deardorff, and Deardorff left Donaldson a supervisory file on Kastrul but not on any other HR employee.  Turning to her January 2008 reference to the Settlement Agreement, Kastrul argues that when she asked Donaldson to review the Agreement and took her concerns to Powell, who in turn spoke to Donaldson, Donaldson perceived her challenge to his performance review and her reliance on the Agreement as a threat.

If Kastrul had not referred to the Settlement Agreement in conversations with Donaldson in mid-January 2008, the eight years between execution of the Settlement Agreement and Kastrul's termination would be much too long to support the causation prong of a retaliation claim.  However, fewer than five months passed between Kastrul raising the protections of the Settlement Agreement and her termination.  When considered along with Donaldson's comment that Kastrul was threatening him "with the protections you believe you have from a previous lawsuit," Sherman Decl. Ex. 9, the period is short enough to support the causal link as held in the cases cited above.  Kastrul has made a sufficient showing to create a jury question on causation.

      C.     <u>Were the City's Stated Reasons for Firing Kastrul Legitimate or Pretextual?</u>

Donaldson based Kastrul's termination on three inadequacies he perceived in her performance:  (1) the "[a]bility to succinctly finish projects in a timely and complete manner"; (2) the "[a]bility to use good judgment in addressing and resolving human resource issues"; and (3) the "[a]bility to provide customer service and assistance that is valued by many managers who now either don't want to use HR or want to use different staff in HR."  Sherman Decl. Ex. 13, at 1, 2, 5.

If established, the prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff. The burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. If the employer meets this burden, the presumption of unlawful discrimination "simply drops out of the picture." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S. Ct. 2742 (1993). The plaintiff then must produce sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext for discrimination. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000).

"[A] plaintiff can prove pretext in two ways: (1) *indirectly*, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) *directly*, by showing that unlawful discrimination more likely motivated the employer." Noyes v. Kelly Services, 488 F.3d 1163, 1170 (9th Cir. 2007) (internal citation and quotation omitted). "When the evidence is direct, [we] require very little evidence to survive summary judgment in a discrimination case. But when the plaintiff relies on circumstantial evidence, that evidence must be specific and substantial to defeat the employer's motion for summary judgment." EEOC v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009) (internal quotation omitted); Nilsson v. City of Mesa, 503 F.3d 947, 954 (9th Cir. 2007); see also Davis, 520 F.3d at 1091 & n.6 (declining to resolve whether circumstantial evidence of pretext must be specific and substantial, as opposed to a lesser amount such as is sufficient for direct evidence, and noting the two lines of cases emerging within the circuit).

Defendants contend that the City's stated reasons for firing Kastrul were legitimate and non-retaliatory. They claim that throughout the years of Kastrul's employment, including before

her 1998 lawsuit, her performance appraisals from three different HR directors consistently included detailed criticism of her insubordination and inability to accept responsibility for any performance-related shortcomings.

Kastrul views the evidence differently. For example, she maintains that she had difficulty obtaining information and feedback from Maintenance Services Director Elizabeth Papadopoulos on both the safety manual and recruitment position, keeping her from properly completing the projects. Although she was criticized for failing to make progress on reformatting all of the City's job descriptions, the project has yet to be completed and, thus, must not be a priority. Kastrul claims that her investigation of Jane Doe met all expectations of Doe's supervisor, even though Donaldson had issues with it. Kastrul interprets the statements of some managers that they did not want to use her services as meaning that they did not want to use the services of HR at all, no matter which employee provided them.

Kastrul's strongest evidence of pretext is the difference in tone between Donaldson's January 11, 2008 performance review of Kastrul and his February 13, 2008 follow-up memo, written after he reviewed the Settlement Agreement. In the second document, Donaldson added new tasks, more fully specified some of the tasks previously listed, and added interim deadlines. Especially in light of Donaldson's reference to Kastrul threatening him with the protections in the Settlement Agreement, a jury could find that he had a retaliatory motive to increase his expectations for Kastrul's performance in 2008. In sum, there is a material question of fact as to whether the City's rationale for terminating Kastrul was pretextual. Accordingly, I deny defendants' motion for summary judgment against the Title VII and ORS 659A.030 retaliation claims.

II.     First Amendment Retaliation Claim

Kastrul alleges defendants retaliated against her for filing the lawsuit against the City in 1998.  In her response brief, Kastrul includes as part of her protected speech her January 2008 assertion of rights to protections she obtained from the 1998 lawsuit settlement.

> It is well settled that the state may not abuse its position as employer to stifle "the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest." Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).  Acknowledging the limits on the state's ability to silence its employees, the Supreme Court has explained that "[t]he problem in any case is to arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id.

Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009), cert. denied, 130 S. Ct. 1047 (2010).

A First Amendment retaliation claim against a public employer requires the analysis of a

> sequential five-step series of questions:  (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

Id.

    A.     Statute of Limitations

Based on the period between the 1998 lawsuit and the filing of this case on August 25, 2009, defendants argue that Kastrul's First Amendment retaliation claim is untimely under the two-year statute of limitations.

Kastrul measures the limitations period as starting at her termination date in June 2008, and not the filing date of the 1998 lawsuit. Thus, she claims to have filed this action well within the limitations period.

Section 1983 claims use the two-year statute of limitations for personal injury actions. Sain v. City of Bend, 309 F.3d 1134, 1139 (9th Cir. 2002); ORS 12.110. I agree with Kastrul that the limitations period began on her termination date and not on the date of the protected activity. Accordingly, the claim is timely filed. You cannot file a claim for being terminated in retaliation for exercising First Amendment rights *prior* to being terminated. Defendants' argument actually speaks to whether Kastrul can show causation between her 1998 lawsuit and her 2008 termination.

### B.    Matter of Public Concern

Defendants argue that Kastrul's January 2008 assertion of her rights did not involve a matter of public concern and thus is not protected by the First Amendment. Defendants characterize this speech as a personal grievance at the workplace.

The plaintiff has the burden of showing that the speech addressed an issue of public concern.

> Speech involves a matter of public concern when it can fairly be considered to relate to any matter of political, social, or other concern to the community. But speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern.

Eng, 552 F.3d at 1070 (internal quotations and citations omitted). Whether the speech addressed an issue of public concern is a question of law. Id.

The parties do not dispute that Kastrul's 1998 lawsuit against the City addressed a matter of public concern. I do not have details about that case but the Settlement Agreement contained terms relevant to all city employees, such as the 360-degree survey of managers and an employee climate survey. In contrast, Kastrul's January 2008 speech concerned her disagreement with Donaldson's opinion of her work, as stated in her performance review, and her contention that Donaldson assigned her duties that violated the Settlement Agreement. These two issues do not affect other City employees or residents of the City. Instead, these issues are "individual personnel disputes" that are not relevant to the public's evaluation of the City's performance. Id. Consequently, I conclude that Kastrul's January 2008 speech is not a matter of public concern and is not entitled to First Amendment protection. I grant summary judgment against the portion of Kastrul's § 1983 First Amendment retaliation claim based on her January 2008 speech.

      C.      Motivation for the Termination

Defendants next argue that Kastrul cannot establish that her protected speech based on the 1998 lawsuit was a substantial or motivating factor in her 2008 termination. They note that ten years passed between the events so there is no close temporal proximity between the protected activity and the adverse action.

The plaintiff has the burden of showing the state took an adverse employment action and the speech was a substantial or motivating factor in the adverse action. This is a question of fact. Eng, 552 F.3d at 1071.

I concluded above that in the Title VII and ORS 659A.030 retaliation claims, a jury must decide whether the City's reasons for terminating Kastrul were a pretext. The same analysis applies here.

In sum, I deny defendants' motion against the First Amendment retaliation claim, but limit the claim to retaliation for filing the 1998 lawsuit.

III.   Breach of Settlement Agreement Claim

At oral argument, Kastrul's counsel clarified that this claim is limited to three areas: (1) the reduction in the scope of Kastrul's job responsibilities; (2) Donaldson's assignment of duties to Kastrul for which she was not skilled or trained; and (3) failure to use the just cause standard for termination.

Kastrul contends the evidence shows that the City violated the terms of the Settlement Agreement by reducing the scope of her job responsibilities. When supervised by Deardorff, Kastrul claims to have been primarily responsible for recruitment and shared other responsibilities with Deardorff, including employee benefits administration, contract negotiations, general problem resolution, new employee orientation, training and development, and workers' compensation claims coordination. According to Kastrul, Deardorff reduced some of Kastrul's duties after the settlement and Donaldson made further reductions. He moved Kastrul's duties related to employee benefits to the HR secretary, moved recruitment duties to Foiles, and assigned Kastrul clerical duties such as changing all job descriptions into a consistent format. Donaldson also made safety issues Kastrul's predominant responsibility even though she had no training or background in issues which would normally be performed by a safety officer. Concerning the termination, Kastrul argues that she was forced from her job and terminated without just cause.

Defendants contend the evidence does not show that Kastrul's duties were diminished. They note that she never filed a complaint about the issue and did not raise it with Deardorff until

December 2006.  Defendants rely on the full range of duties Donaldson outlined in his February 2008 memo to Kastrul and argue that if her role in recruitment was reduced, it was the result of City departments declining to use HR for those services.  Defendants also rely on the Settlement Agreement's term allowing adjustment of Kastrul's duties.

This is a very fact intensive question which must be decided by the jury.  At a minimum, a jury could believe Kastrul's testimony that her role in recruitment diminished over the years as tasks were taken on by Foiles.  I deny defendants' motion for summary judgment against the breach of the settlement agreement claim.

IV.     Breach of City Policies Claim

Kastrul alleges that the City breached Personnel Policy No. 1-7, which provides procedures for the resolution of complaints arising from the employment relationship, by failing to take action on her complaints against Donaldson.

Defendants contend that Kastrul did not follow the complaint resolution process because she never filed a formal written complaint about Donaldson with either the City Manager or City Attorney, as required by the policy.  Defendants note that the Settlement Agreement is not implicated in this claim because its terms only change the normal policy if Kastrul has a complaint that the City Manager engaged in an unlawful employment practice and Donaldson is the Assistant City Manager and HR Director.  According to defendants, Kastrul received all the process she was due under the Personnel Policy No. 2-5 when she chose not to schedule a pre-disciplinary meeting with Donaldson and did not file a written appeal to the City Manager.

Kastrul maintains that she began her complaint at the informal step one process–"Informal Discussions"–by contacting Powell about Donaldson in January 2008 after

Page 17 - OPINION AND ORDER

Donaldson gave her the performance evaluation. In breach of the Personnel Policy, Powell did not evaluate her concerns but instead allowed Donaldson, the accused individual, to do the evaluation and provide feedback to Kastrul. After receiving the Due Process Notice, Kastrul asked to speak with McIntyre personally but he refused to do so until she responded to the Notice. McIntyre did not investigate the complaint and did not meet with Kastrul. Thus, Kastrul argues that she was given neither an informal pre-disciplinary meeting in relation to the Notice nor any route for appeal, both in violation of the Personnel Policy.

Personnel policy statements can create a contract between an employer and an employee. Fox v. Bear Creek Corp., 99 Or. App. 90, 92, 781 P.2d 378 (1989). As a result, the vast majority of policy statements and handbooks written in the last twenty years contain a disclaimer that the handbook does not create a contractual relationship. Thus, this court rarely sees a breach of employment contract claim unless it is based on a separate document that is clearly a contract, usually for a limited term of employment. I do not have the City's entire personnel policy in the record so I cannot look for the typical disclaimer. I did discuss the issue with counsel at oral argument, however, and I have decided to grant summary judgment dismissing this claim. One reason for doing so is because Kastrul raises a claim for breach of the settlement agreement, including its provision requiring a just cause standard for termination. The personnel policies referenced in the breach of policies claim would be evidence of what constitutes the just cause standard. I think it would be extremely difficult for the jury to sort out the two claims, even if two contracts existed, and there is no difference in damages. Thus, I dismiss this ancillary claim.

## CONCLUSION

Defendants' Motion for Summary Judgment (#28) is granted in part. I grant partial summary judgment and dismiss the breach of city policies claim and the portion of the First Amendment retaliation claim which relies on Kastrul's January 2008 speech.

IT IS SO ORDERED.

Dated this ___8th___ day of March, 2011.

                                            /s/ Garr M. King
                                            Garr M. King
                                            United States District Judge